We appreciate your being here. We thought it was better with everyone being prepared to put off a day rather than to have you come back and reschedule for another time. We have four cases on the calendar this afternoon, three patent cases which are being argued. And a fourth case from the Court of Federal Claims that is being submitted on the briefs. We understand counsel has suggested and we agree to combine the two Belden cases as being similar and so you have more time, double time if you need it. And they are Belden v. Berk-Tek, 2014, 1677, and 1676. So, Mr. Lowery. Thank you, Your Honor. May it please the Court. Matt Lowery, Foley & Lardner for the appellant. Matt Ambrose, the counsel, is here with me. I think this may be the first time he's had the pleasure of appearing before this Court. I thought I'd address first, obviously there's two patents. I'll refer to them as the 575 and the 061, which are the last three digits of the patents rather than the IPR numbers, if that's okay with the Court. And I think some of the arguments are fairly similar. I'll try and note any differences. But it would be remarkable if the same issue were to come out differently among the two cases, at least in my opinion. I thought I'd address first what I thought is a little bit more subtle issue, which is the notion of something twisted together. And so the claims are quite recited, at least certain of them recite. The purpose of oral argument is to straighten out arguments rather than twist them, but however you wish to proceed. Thank you, Your Honor. I would say that the fact that it's twisted is perhaps why it's not obvious. There's the centerpiece going through in the shape of an X, and the claim recites that this and the conductors on the outside are twisted together. And what the Board said is it's not a method of manufacture. Of course it isn't. There is aspects of that. If you have a door that is nailed shut, that is a specific structure. It's an apparatus claim or part of an apparatus claim, a door that's nailed shut. But it's not limited, I suppose, to the process of nailing, but it's limited to the result because that's what it means in the common vernacular when you say nailed shut. So if you were to drill holes in it and slide in nails, it's not nailed shut because you push on the door and it would open. It's a different structure when you nail a door shut. The Tessier reference is pretty much on point, except possibly for the twisted aspect of it, and that's in the Japanese patent. Well, okay. So if we're talking about – so there's two Japanese patents. There's one. 470. 470. Thank you, Your Honor. So that's in the 575 patent. And what that shows is also not a twisted – it's a helical preformed shape, the same as Tessier. In fact, it's expressly that way, and it's expressly that way because it's a different structure. And so what the Japanese 470 patent shows is you actually heat the thing up, you twist it, and then you put the conductors in. The reason you're heating it up is because you're changing the structure of it. So it's not twisting it together. So I analogize, and I brought an umbrella, and then I realized maybe that's a demonstrative and I shouldn't use it. But if you imagine having an umbrella and you twist it, it draws things in. It creates a tension within it, and that's what they call closing the cable, twisting it to close the cable, which is the words, I think, from the claim language and certainly in the patent itself as well. It is a different thing to preform a helix and then lay the wires into it. So if you're thinking of that umbrella, if you twist it, it draws in, it gets tighter. And in fact, it will stay together if it were flexible and you bent it. If instead you preformed it and you laid the other parts of the umbrella in, if you bend it, it's loose and it will come apart. But really the question here is not just whether the petitioner – oh, and by the way, there's also no obviousness rejection based on that Japanese 470 reference. It's in a ground on its own. So even if it had twisting, it's not combinable with Tessier in what the board examined. But really I think the question here is, is this a patent – a part of the question here – is this a U.S. patent and is there a difference? Because there is a burden of proof here that is different. Actually, in the 061, BIRCTEQ cites the Etiquer case that says, well, if you make a prima facie case, you have to rebut it. That's for a patent application. That's not what happens at an IPR trial. We haven't issued a U.S. patent. We have a burden of proof. It's not the same burden of proof as in the litigation, but it's a burden of proof. So what the board said in the ground – it is the basis – is that it said there is no evidence that there is a difference in structure when you freeform as opposed to when you twist. The first part of that is legal error. There is no evidence that it's patentable. Burden of proof is not on the patentee. It has to be proved with evidence that there is no difference in structure.  They're like, is there a difference? He's like, well, I'm not aware of any, but there could be. Exactly. There could be, and there's no proof that says there is no difference. That really should be the end. It's a failure of proof. But if one wants to go further and said, okay, I want to decide this or put the burden of proof on the patentee, there is proof. The first part is common sense. If you twist a rubber band, it's not the same as forming a helix and laying another rubber band in. If you twist the umbrella, it's not the same as manufacturing a twisted one. Even if you take a washcloth and twist it, it's not the same as fabricating and stitching together one that's in a twisted form. They are structurally different. So when you helically extrude the wires, that's a twist even. Doesn't that happen as the extrusion process is taking place? It is, but the structure is different than if you twist the conductors and the internal piece together as opposed to forming a structure that's in helical form. So there's no internal tensions. There's no difference as you've got this structure and you twist it. They heat it up and they create a helical structure before they lay the wires in. So it's like I said, it's like the difference between going like this on the umbrella or manufacturing it by having something that's just a straight rod, no twisting in it, no internal twisting pressures, and laying the wires around it. Just so I understand your argument, if I were to look at a picture of both end results, one is the Tessier in Japanese reference and then one is yours, how would they look different if I was just looking at a static photo? Well, if you're talking optically, I'm not sure. But that's not the test because there are many things that are not visible to the eye. They are different structures in that there are internal tensions. So if you were looking at the door nailed shut and a door where you've got holes drilled in and a nail slid in but not actually nailed shut, they would look the same if you looked at them in a picture. But they are different structures because one, the door can open, and the other, the door can't. And the same thing is true here. If you look at the result of twisting, you have a different structure. And here's how the board knows that. The 470 Japanese patent is specifically reciting the advantage of preforming over twisting. And what they say is quoted in the briefing. But what they say basically is, look, if you've got this twisting, it comes unraveled. So what that's used for, I think, is SZ twisting. Well, I think this all goes back to claim construction, right? Whether we agree with you that this is kind of a product-by-process type of claim. I respectfully don't think so, Your Honor. I think what this goes back to, because the structure of the claim as a whole, I suppose think of it as a product-by-process limitation. But not really. It's like, is the door is nailed shut a product-by-process limitation? One ordinarily doesn't think of it that way. But there is a structure that has meaning by being nailed shut. Here, there is a structure that has meaning by being twisted together to close that is different than preforming a spiral and laying in. And they may look, if you're not looking at internal forces and everything, they might look similar. If you're looking at internal forces, they behave differently. And so what the Japanese 470 patent says is, if you preform it, you don't need to worry about it unraveling because you don't have that internal tension. If you twist it together, you have to worry about it, which is to say, it's a different structure. They think it's advantageous in the context of Japanese 470 to preform. That's fine. Tessier preform, that's fine. But because they're different structures, there is meaning to the limitation twisted together, all of them twisted together to close the cable. Because there's a difference in structure between that and helically forming, that's the question. I mean, the board said there's no evidence that there's a difference in structure. Are you arguing a method of manufacture? It is an apparatus claim with a structure that happens to result from twisting it together. If you could get to that same structure a different way, it would cover it as well. But it is, like I said, it's like a doornail shut, the lid of a box closed. It's the result of a method of manufacture of closing the lid, I suppose so, but we usually don't think of it that way. Well, every structure has a method by which it was made. Exactly, Your Honor, which is why I think it goes. But that doesn't make it process related. Exactly, Your Honor. And so that's why I think what this issue boils down to is, does twisted together to close refer to a structure that is different than helical and laying in? Because if it's a different structure, there is a limitation there, and it is what it says it is, twisted together to close, just like nailed shut. Everything is a result of a process, and the question here is, is this a structure twisted together to close that's different than preforming? And as I said, there's this Japanese 470 patent that specifically recites it. In the 061 patent, there's actually an expert declaration that says, no, these are preformed and that's different than twisted together to close. That's the only evidence. It was not cross-examined. The definitions of the two patents, neither of them talk in these terms about how the conductors and the interior support are created and formed, whether it's apart or together, right? The spec is silent on this point. The spec is, I wouldn't say silent on it, because it talks about cabling and it talks about twisting together to close, which one of skill and the art would understand to mean, and it says twisted together. One of skill and the art would understand that to mean it imparts a structure that's different. But there's no proof that it doesn't, and the only proof that's there in the 061 is an expert declaration, not impeached by cross-examination. The only way that he is discredited is he happens to be a named inventor. I mean, this was a trial. There's no articulated reason not to credit what he said. So what the board did is they said, well, there's no evidence. That was actually incorrect on the record, because there was at least in the 061 evidence, and they also said, you, patent holder, have to prove it. You have to provide the evidence that there's a difference in structure, and that was the turning point on their decision, and I respectfully submit, if they thought there was a difference in structure, they would not have reached the same conclusion. So I think that the decision fairly turns on that point, and the reason that it came out, in my view, the wrong way is because the board said no evidence, putting the burden on the patent holder, which I think is incorrect as a matter of law, and also, there was evidence. There's this notion of twisting together rubber bands as opposed to forming them, which is just, I suppose, the common sense. There's the Japanese patent, 470, which specifically recites the advantages of the difference in structure that results from preforming as opposed to twisting. There's the Gerice declaration in the 061 where he says it's different, and therefore, Tessier doesn't show it. And so I think that, again, if this is actually like in litigation land, there was no evidence from which one could, with a burden of proof in the normal way of review, there was nothing from which one could find things were twisted together. I don't think that there's a few other arguments about this. Birkbeck argues Tessier shows actually twisting them together. I think it plainly doesn't. Certainly, it's not proved to. Certainly, the board did not find that it was anything but preformed. They said the structure's the same, not that Tessier's not preformed. They make an argument about waiver. We put the cites in our brief. It was argued all along. But even if it was raised for the first time at trial, this is a trial, right? You can raise things at trial. And the board considered it on the merits. If there were a waiver, it seems to me the board would have said so. And then the last issue is ground nine, which is Japanese 470. And, again, if one looks at page 370 of the brief, there's this preformed helix. And it's different plumping these and twisting them together than it is preforming and laying them. The only other things I'd like – well, there's the channels question. This is the way I think I would boil it down for the court, if I may. The question here for channel is a channel could be like a gutter in a street, a channel in a street. Or a channel could be more like a tube. If one talks about a channel through a mountain, one's not talking about a groove over the top of the mountain. They're talking about a tunnel through it. Both of those are plain means. And so the question is which one is appropriate? And I think in the context of the patent – Channels are on the claim, right? But grooves are on the spec. That is correct. They have to be the same. I don't think so, Your Honor, because they're used differently. I respectfully submit, Your Honor, that the difference is groove is always referred to in the context of the separator. The context of the patent claim is a – and I admit this is, I think, a closer issue. I look at this. It is a closer issue. But it's one for which no deference is provided to the patent office. It's a claim construction question. And there's no purported factual findings. The claim itself says a couple things. It talks about forming a channel in the cable. It's not talking about a channel on a street. It's more like a channel kind of going through the cable the way that a channel through or in a mountain would be fully enclosed. It talks about how the surface of the interior support defines the channel, right? That's right. But in the context of the claim, there's two parts of the context of the And the first is it's talking about in the cable. So we're not talking about – so in the context of the claim, it's talking about forming a channel in the cable, not a channel in the separator, I think. That's at least the way I read it. The other is it says where the twisted pairs or the conductors are disposed within the channel. And if one looks at Tessier, you can see, would you say that these twisted pairs are in that little groove? The answer is not if you're thinking the channel is something that's holding it through the cable as opposed to the location of it. Same for this one. So for the other figure. So when one is talking about a channel where it's disposed within the channels, those small grooves aren't because they don't essentially or substantially fully enclose it. But that is the question, is one of plain construction without deference. And the record is what it is, and I think it's reasonably well-briefed. But, as I said, the way I would see it is a choice of picking. And it is correct. It's groove in the specification. It's channel in the claim. One could say that shows that they're meant to mean something different because if you wanted it to be the groove, you just said groove, like you did in the specification. One might say, what's the support? And the support is, well, in the context of disposed within. I don't want to end my initial piece without touching on a few claims in the 061 appeal that are different than the twisted together and the channel. The first is ground two, which has dimensional limitations. And in the petition, and the only evidence, including the reply, there was no evidence. They just said, here's this reference with these dimensions. The reference itself is very different. It's a shielded cable. We're in an unpredicted art. A shielded cable meaning it's got a metal shield. The claims actually recite not shielded. It doesn't have a separator. In the Gerice declaration, it talks about how small differences in dimensions can make a huge difference. If one thinks about the very purpose of these claims, they're saying we're not making it smaller. We're putting a separator in to push things further apart. And without any articulated reasoning based on the prior art, there's a conclusion that this is unpatentable. I would suggest this wouldn't even in prosecution stand review. There's no prima facie showing. For ground three, the additional limitation is SC stranding. So what SC stranding means is you twist this way for a little bit, and then you twist this way for a little bit, then this way, then this way, back and forth. And what the board did is said, we'll take Tessier. It's twisted only one way. And we're going to say it would be obvious based on this SC stranding thing to SC strand Tessier. First of all, I think there's legal error in the board decision that's plain. And what the board did was they said, this stands or falls with ground one, which is Tessier twisted together. That's plainly wrong. There is additional grounds for patentability. There's an additional limitation. So that's a legal error in the board's decision. Birkbeck says it would be obvious to do it. The only evidence on obviousness, assuming evidence is required, about reason and motivation to combine, is from the patent holder, where a declaration was submitted where he said it wouldn't be obvious because when you're talking about the plot of Tessier, which is these cable twisted pairs sitting in a separator, you couldn't, if it's preformed, and it is, he says, you couldn't lay them in. I mean, you can't lay them in this way, that way, this way, that way. So Tessier is not consistent with being combined with this reference. There is no impeachment, no cross-examination, no reason not to believe Mr. Gerais, who's got plenty of expertise in this area. And so I'd respectfully submit that those two grounds stand on a different footing than the others as well. Thank you. We will save the remainder of your time for rebuttal. Thank you. Mr. Blank. Good afternoon, Your Honor, and may it please the Court. My name is James Blank, and with me is David Soufian. I will address first the twisted-together issue. This is a claim construction issue. The Board construed it, and the Board specifically determined that it was not a product-by-process limitation. That is what Belden argued below. And specifically, if I can direct the Court's attention to which was submitted by Belden, in that paragraph, Mr. Gerais says, in contrast to the core member of Tessier 046, the separator interior support of the 061 patent is formed such that the arms extend linearly in an axial direction along the length of the pair separator interior support, and is then helically twisted along with the twisted pairs about a mile apart. As a result of the so-called cabling process that is used to close the 061 patent's cable. It's our position, and the Board found, that twisted-together in either of the patents refers to structure. The 575 patent and the 061 patent are each entitled high-performance data cable. The figures all show a structure of a cable, not any steps or any processes. Nothing in the specification of either patent describes any process or any step, let alone any process or any step, of twisting together simultaneously the interior support or the separator along with the twisted pairs or conductors, which is precisely Belden's proposed construction. The where-in clauses in all of the claims after the recitation of the structural elements all describe the structural relationships between the various components. As the Board found, the last where-in clause adds to the claim that the four twisted pairs in the interior support are twisted together about a common axis. Read in context, the Board correctly construed that to mean that twisted together simply means just that, that the conductors and the separator are intertwined, and that's what the patents show, and that's what the prior art shows. Now... What do you mean intertwined? You mean twisted together? Yes. It doesn't matter when, it doesn't matter how. The patents do not say anything about when that's done or how that's done. It just means that they are, in the case of the 575 patent, the conductors and the interior support or the separator are twisted together about a common axis. In the case of the 061 patent, the conductors and the separator and the interior support are twisted together along the length of the cable. That is simply telling you about a common axis is telling you the location. In the case of twisted together along the length of the cable, that's telling you where, a location in the context of the claims, which relate to and claim a fully finished cable. Now, the only... I'll use the word hook that Belden has to try to say, well, this is all the result of a manufacturing process and they're different, is the language in the claim to close, which is in the last whereas clause, which says that they're twisted together in order to close the cable. And one sentence in the specification in column five that says that the separator may be cabled in an SC configuration or helically. From those snippets, Belden and it's Mr. Garris, it's declarant, without any explanation say, well, because it uses the word cabled in the specification and because the claim uses the word to close, that must mean that it relates to this process and therefore they're twisted together as a result of this process. To close as the board found simply means just that. It is the result of the, in the whereas clause or in the wearing clause, it is simply the result of the prior limitations. It means to jacket a completed cables recited in the claims needs to be recited as a structure. One of its structures, a jacket. That's all that means. Cable, the word cable may be cabled is used in column five. It says the separator may be cabled and it says it may be cabled in an SC format, which Mr. Lowry described, or it may be cabled in a helical shape. It says nothing about, the specification says nothing about cabling the conductors and the separator together. That's the only reference to cabled and it only relates to the separator. Now the standard of review here on claim construction is Teva versus Sandoz. So it is De Novo, but the findings, the board's factual findings with respect to the extrinsic evidence, specifically with respect to the Garris declaration and with respect to the dictionaries as, as to the term channel is entitled to deference. Here the board looked at the Garris declaration and there were two. There was one Garris declaration, the 575 patent that had nothing to do with Twisted Together. It was a declaration from the 061 re-examination and he had one sentence in there regarding his interpretation of channels. What kind of deference should we apply with respect to these, these items, these extrinsic items? Substantial evidence? Yes. Yes, Your Honor. Substantial evidence. Of course Teva didn't talk about substantial evidence, but you're saying that's implied. I'm saying that, that this court has consistently held with respect to findings by the board as opposed to a district court, a substantial evidence standard applies. And I believe in this court's recent decision in Ray Kuzo, the board recognized using a substantial evidence standard from findings, factual findings made by the board. So yes. So how does it work with the broadest reasonable interpretation doctrine? Okay. Here the board did. Do we first consider the extrinsic evidence and as did the board and if the board findings with respect to that evidence has substantial evidence, we give deference to that and then we sort of fold that into the overall construction, determine whether the board reached a reasonable one that's consistent with the specification. I'm just trying to figure out what you think the methodology is. I think the methodology is the same methodology that the board applied. And it is first you look to the intrinsic evidence, which is what the board did. The board first looked at the language of the claims. The board then looked at the specification and made a determination with respect to channels that there was no definition in the specification for channels. And it looked to a dictionary and it was two dictionaries. It was two dictionaries that Belden's counsel proffered and Belden pointed to one dictionary definition for channel as a usually tubular enclosed passage. I guess what I'm wondering is broadest reasonable interpretation to me always meant you're affording some level of deference in the board's weighing and consideration of various factors and evidence, whether it's intrinsic or extrinsic. But now we know that claim construction can possibly include fact finding. And so I'm trying to figure out now how those two thoughts come together. It's a good question that frankly, I'm not sure I have the answer to as I stand here right now. Clearly the findings, clearly it would be the fact that Belden briefed everything under a De Novo standard. We submitted letters with Teva versus Sandoz, a supplemental authority. Belden did not respond to it. But I think if anything, it further supports our position that you have a broadest reasonable interpretation, which is a standard which the board recognized and used. And now on top of that, you have under Teva versus Sandoz, that factual findings are also entitled to deference. Here, I don't think it... It's not just factual findings. There's subsidiary factual findings based on the extrinsic record. Right, but I'm not sure that happened in this case. I mean, the findings here, the factual findings here where there's unclaimed... So any factual... Okay, any factual findings that are based solely on intrinsic evidence, in your view, would that make our standard review purely De Novo? I think if it's based on just looking at the intrinsic evidence, that that is De Novo. But factual findings that arise from the extrinsic evidence is afforded deference. I don't believe that factual findings subsidiary to... So once we start applying the De Novo standard, then our analysis should be the broadest reasonable interpretation? Yes. Let me just comment on channels. The... Really the only issue that Mr. Lowery raised is some purported distinction between channels and grooves. And I would submit that if you... If the panel looking at claims one and 19 is the best evidence that there is no difference between channels and grooves. The board correctly construed channels as an open space that is defined by the surfaces of the interior support. And that it has nothing to do with the jacket in terms of the definition of channels. Belden tries to argue that there's some sort of difference between channels and grooves in that somehow the specification indicates that the definition of a channel relates to also the jacket, even though that's not in the claim. Whereas the definition of grooves has nothing to do with the jacket. If you look at claim 19, it specifically says that the grooves are defined by the channel. The surfaces of the interior support. The same way that channels is used in the claims, where it says in the channels are defined by the surfaces of the separator or interior support. It's the same thing. Claims one and claim 19 both tell you that the channels are formed by or defined by the surfaces of the interior support. Totally divorced from anything having to do with the jacket. Now, if the board's claim constructions are upheld here, there's no dispute that the prior art invalidates. All of Belden's arguments are based on claim construction. There was no argument below for any of the claims that construed in the way the board construed them that the prior art invalidates. What about your opposing counsel's argument about the diameter of the cable and then the SSE curve? Right. He spoke to ground two in the 061 patent. The board determined that those claims were rendered obvious by a combination of Tessier and a patent invented by a gentleman by the name of Muir. Again, this is a situation where the board's findings on invalidity are entitled to deference under a substantial evidence standard. That prior art, obviously it's evidence. Both pieces of prior art are evidence. The dependent claim, which ground two relates to is simply making the claimed cable a smaller diameter or a diameter within a certain range. The board found and cited KSR simply said, that's a minor improvement. We are dealing with Muir, a patent that deals with telecommunications cables, whether or not it's shielded or unshielded doesn't make any difference. It would be obvious to one of ordinary skill in the art based on the references themselves, that you want to make a cable if possible of a smaller diameter. The board based its findings on that prior art. With respect to ground three, which is a combination of Tessier and JP 307, it was simply applying SC stranding to the case in a dependent claim. It simply says that it's twisted in an SC direction. Well, JP 307 shows that it shows a separator. It shows twisted pairs and it specifically says you can do the twisting using SC stranding. The board had this evidence in front of it. It reviewed it. The board noted that it was in the same art areas, noted it was a minor improvement. And based on that, it found based on substantial evidence that it was obvious. Belden didn't argue below that based on these constructions, that they were not invalid. I, that's all I have. Thank you very much. That's fine. Thank you. Mr. Lowery has a little rebuttal time if you need it. Yes. Thank you, your honor. I guess I'd like to start, start with where Mr. Blank ended, which is to, yeah, this is why it's supposed to have evidence and it's supposed to be based on fact findings, not the board doing its own conjecture or whatnot. So first of all, Mr. Blank asserted that the Japanese reference showed twisted pairs. It does not. What this reference is about is quads. So twisted pairs, two conductors twisted together. A quad is four conductors twisted together. You might put four quads with a separator in between them, but they're, they're together. A twisted pair is viewed as one communication channel. A quad is viewed as one communication channel because they all interact. And if you look at it, you can see there's bare copper conductors in there. It's a quad. It's not even a cable composed of different communication channels. Where is the fact finding? Where is the basis to show that this shows twisted pairs in between a separator? Surely the board didn't have it. So what we have here is to the extent the board is, and we have evidence, actual evidence that says, no, you wouldn't take that approach and do it with Tessier. There's nothing rebutting it. The board cannot act as its own fact witness and fact expert. In fact, I don't even think it should be acting as a fact expert because then I, as counsel never have a chance to cross examine the expert. They may reach a conclusion like it shows twisted pair that's manifestly incorrect. That's why there's a burden of proof. Birk tech could have used an expert in their opening. They could have used an expert in their reply. I would then have cross examined them extensively. And we wouldn't have these kinds of questions. If we look at the ground with mirror, it says, oh, it's just dimensions. The first garage app declaration talks about dimensions are in the context of cables. It's like a magic art. Who knows what's going to work. You don't, as I said, the separator is actually making things bigger. There are patents out there that talk about making cables bigger so that you don't have cross talk between them. Where is the fact finding that supports? It's always better to make a cable smaller. Where is the evidence? There is none. Who had the burden of proof? Surely not Belden. This was not a fair proceeding because we don't even know what to put in play based on when there's no articulated reason or motivation to combine. That's actually based on the reference. It's not, oh, let's just make things smaller without reference to anybody of ordinary skill in the art. If we jump up to the twisted pair piece, a couple of things I thought were interesting. First of all, everything that the board heard pretty much was attorney argument. How do you interpret Tessier? All that's Birktex offers attorney argument for the board to then come in and serve as their own experts in interpreting the references is not wrong. That's not the way that the litigation works. You need to present evidence so that it can be cross examined. There are some cases where a lay jury can do things even without an expert, but this is not one of those cases. This is a very defined art. It's an unpredictable art as Mr. Grice established in his declaration. There's a particularly interesting thing Mr. Blank said, which he said the board found that twisted together to close. You remember I talked about how closing it in when you twist it is different than it's not closed in. If it's just wrapped. So he said, as the board found to close just means to jacket. Well, first of all, where's the evidence to support that? There is not second. It doesn't even make sense because you twist it together before you put the jacket on it. That's the way the process works as anybody of ordinary skill in the art would know. Where is the evidence that supports any of this stuff? I would agree with Mr. Blank that in the context here for channel there, at least there's, there's no substantial evidence review. In fact, there was no evidence presented by anybody, but, but Elvin in this case, and again, I, in hindsight, truly wish they had presented an expert so that I could have cross examined them and we get all this out in a, in a fuller way. Instead, it just got lobbed at the board, the board, you know, I'm not saying they weren't trying to do their job. Of course they were, but they did their thing without my chance to deal with it or certainly not directly. And I, I, I maintain the point that a door nailed shut is a, an apparatus like limitation, but it imparts a structure that's different than simply having nails slid into slots. And the same way twisted together to close the table, to close a cable is a structural limitation that has meaning because the structure is different. That was established by the Japanese patent is established by Mr. Grice. It's common sense. And surely there was no evidence to carry the burden, which was, which needs to be carried by her tech. But again, they chose not to submit anything. I guess the last comment on the channel thing, if one, Mr. Blank pointed out channel claims one and 19 to prove the point, the channel has to be groove. And I think it's an interesting thing because claim one talks about the, the at least one plurality located in a pair of adjacent arms, trying to find the, the channel limitation and claim one. I can fuse because I thought it was five, seven, five when he first said it, but most of the channel limitations, almost all of them, if not all of them refer to defining a channel in the cable. That is different than a groove in the separator. And that's the point. And there's some other claims to talk about an open space being a channel or a groove. It seems to me that makes a difference. And I think your honor, I just have one moment. That would be all I would offer the court. Thank you. Counsel. We'll take the case under advisement.